The STATE of Ohio, Appellant,

v.

FRIEDMAN, Appellee.

[Cite as *State v. Friedman* (1991), 70 Ohio App.3d 262.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–515.

Decided Dec. 31, 1991.

*Michael Miller*, Prosecuting Attorney, and *James V. Canepa*, for appellant.

*Paul Scott Co., L.P.A.*, and *Paul Scott*, for appellee.

---

TYACK, Judge.

Bernard Friedman was a registered pharmacist and had been one for many years as of the summer of 1988. For approximately ten years, he had been providing Demerol to Gary Bond, a paraplegic who had a prescription for the drug as a result of his injuries suffered in a serious accident. Bond got in trouble with law enforcement personnel in Columbus and offered to provide them assistance in return for consideration on his own criminal charges. In particular, Bond suggested to Columbus narcotics detective Kevin King that he could obtain Demerol from his pharmacist with "doctored" and/or forged prescriptions.

As a result, Detective King prepared a prescription for Demerol for Bond to pass to Friedman. On another occasion, Detective King had Bond alter a prescription in front of Friedman and attempt to pass it. When Friedman refused to honor the prescription, a new forged prescription for the altered amount was prepared and then honored by Friedman. On a third occasion, Bond passed a forged prescription to Friedman with the assistance of Detective King.

As a result, approximately one year later, Friedman was charged via indictment with three counts of aggravated trafficking in drugs, in violation of R.C. 2925.03. Two of the three charges alleged a charge punishable as a felony of the third degree, since the quantity of Demerol involved was alleged to be less than bulk amount. The third charge alleged Friedman was guilty of a felony of the first degree, punishable by a term of imprisonment of four, five, six or seven to twenty-five years and a mandatory five-year term of actual incarceration because the amount was alleged to be greater or equal to three times the bulk amount.

Friedman filed a motion seeking dismissal of the charges against him on a theory that the indictment charged him with violating a general offense of significantly higher degree where a special legislative enactment, illegal processing of drug documents in violation of R.C. 2925.23, applied. The two

code sections were alleged to be in conflict, making pursuit of the greater charge inappropriate.

Following a hearing at which Detective King and Bond testified, the trial court ordered dismissal of the charges. The state of Ohio has timely appealed, assigning a single error for our consideration:

"The trial court erroneously sustained defendant-pharmacist's motion to dismiss a three count drug trafficking indictment based on 'special' over 'general' statutory construction."

The state suggests that *State v. Sway* (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, mandates reversal of the dismissal by the trial court. The syllabus of *Sway* reads:

"A physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03."

The facts in the *Sway* case indicate that Dr. Sway was trading prescriptions for Dilaudid, Percodan and methaqualone for sexual favors. The record in *Sway* does not indicate that any of the three controlled substances were medically indicated for the recipients. All three drugs were apparently provided for abuse or resale, with no medical opinion supporting the advisability or necessity of the drugs in medical treatment.

The facts in Friedman's case are not comparable. The individual who received the Demerol had a long history of receiving Demerol from Friedman for long-standing medical problems. The record also indicates that doctors were in fact prescribing the drug for legitimate use by the individual who received Demerol from Friedman.

As a result of the factual differences, *Sway* does not automatically require reversal in the present case. The recipient of Demerol here was engaged in a bona fide treatment program and apparently used the altered prescriptions to increase the amount of demerol he received. However, the underlying rationale of the *Sway* decision and the express holding of the syllabus may be applicable in determining Friedman's ultimate guilt or innocence, as will be developed in more detail below.

Appellee submits that the decision of the Supreme Court of Ohio in *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818, is more applicable. The syllabus for *Volpe* reads:

"1. Where there is no manifest legislative intent that a general provision of the Revised Code prevail over a special provision, the special provision takes precedence. (*State v. Frost* [1979], 57 Ohio St.2d 121 [11 O.O.3d 294, 387 N.E.2d 235], * * * paragraph one of the syllabus, approved and followed.)

"2.   Because R.C. 2915.02(A)(5) clearly was enacted to reach criminal possession and control of a gambling device and such conduct is classified as a misdemeanor of the first degree under R.C. 2915.02(F), R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person for possession and control of a gambling device."

*Frost, supra,* referenced in *Volpe, supra,* has the following syllabus:

"1.   Where there is no manifest legislative intent that a general provision of the Revised Code prevail over a special provision, the special provision takes precedence.   * * *

"2.   The requirement in R.C. 1707.45 that the defendant bear the burden of proof in claiming an exempt transaction under R.C. 1707.03 does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."   (Citations omitted.)

In addressing the whole question of general as opposed to special provisions, *Frost* reminds us that we are bound by R.C. 1.51, which provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both.   If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

R.C. 1.51 has recently been construed by the Supreme Court of Ohio in *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134.   The syllabus for *Chippendale* reads:

"1.   R.C. 2903.04(B), which pertains to the commission of a misdemeanor that proximately causes the death of another, is a general provision.   R.C. 2903.06 and 2903.07, which pertain to recklessly or negligently causing the death of another while operating a specified vehicle, are special provisions.

"2.   Where it is clear that a general provision of the Criminal Code applies coextensively with a special provision, R.C. 1.51 allows a prosecutor to charge on both.

"3.   Where it is clear that a special provision prevails over a general provision or the Criminal Code is silent or ambiguous on the matter, under R.C. 1.51, a prosecutor may charge only on the special provision."

Therefore, we must first determine whether or not it is clear that R.C. 2925.03 and 2925.23 do not apply coextensively to registered pharmacists in general and to Friedman in particular.

R.C. 2925.03(B) states, in pertinent part:

"This section does not apply to * * * pharmacists * * * and other persons whose conduct is in accordance with Chapters 3719., 4715., 4729., 4731., *and* 4741. of the Revised Code." (Emphasis added.)

R.C. Chapter 4715 deals with dentists and dental hygienists; R.C. Chapter 4729 addresses pharmacists particularly; R.C. Chapter 4731 involves physicians and limited practitioners; and R.C. Chapter 4741 is entitled "Veterinarians." Given the fact that few, if any, persons in Ohio fit under all the above classifications, the *"and"* emphasized above clearly was intended to mean *"or."* Otherwise, almost no one could dispense controlled substances in Ohio. See, also, R.C. 1.02(F), which reads:

" 'And' may be read 'or,' and 'or' may be read 'and' if the sense requires it."

As a result, if a pharmacist were authorized to dispense a schedule II substance under with R.C. Chapter 3719 or Chapter 4729, R.C. 2925.03 does not apply. However, the same exclusion is present in R.C. 2925.23 as to R.C. 2925.23(A) and (D), so this exclusion cannot be a basis for distinguishing R.C. 2925.03 and 2925.23(A) or (D). The exclusions are *not* applicable to R.C. 2925.23(B) and (C), which read:

"(B) No person shall intentionally make, utter, or sell, or knowingly possess a false or forged:

"(1) Prescription;

"(2) Uncompleted preprinted prescription blank used for writing a prescription;

"(3) Official written order;

"(4) License for a terminal distributor of dangerous drugs as required in section 4729.60 of the Revised Code;

"(5) Registration certificate for a wholesale distributor of dangerous drugs as required in section 4729.60 of the Revised Code.

"(C) No person, by theft as defined in section 2913.02 of the Revised Code, shall acquire any of the following:

"(1) A prescription;

"(2) An uncompleted preprinted prescription blank used for writing a prescription;

"(3) An official written order;

"(4) A blank official written order;

"(5) A license or blank license for a terminal distributor of dangerous drugs as required in section 4729.60 of the Revised Code;

"(6) A registration certificate or blank registration certificate for a wholesale distributor of dangerous drugs as required in section 4729.60 of the Revised Code."

Therefore, a distinction between parts of subsections (B) and (C) of R.C. 2925.23 and 2925.03 exists such that the two statutes can be construed as not being in conflict, at least as to subsections (B) and (C) of R.C. 2925.23. R.C. 2925.23(A) likewise does not conflict, since its prohibition reads:

"No person shall knowingly make a false statement in any prescription, order, report, or record required by Chapter 3719. of the Revised Code."

Nor does R.C. 2925.23(D) conflict with R.C. 2925.03, since R.C. 2925.23(D) reads:

"No person shall knowingly make or affix any false or forged label to a package or receptacle containing any dangerous drugs."

■ Since the two statutes do not conflict, the trial court erred in ordering dismissal of the charges on a theory that the special and general provisions were in conflict and could not be applied coextensively. Therefore, the assignment of error is sustained.

This is not, however, to express an opinion that the testimony before the trial court establishes Friedman's guilt. If the testimony before the trial court indicates that Friedman's conduct was in accord with either R.C. Chapter 3719 or Chapter 4729, then R.C. 2925.03 does not apply by its very terms.

■ Further, we do not believe that the legislature intended that every technical violation of a provision of R.C. Chapter 4729 or of a regulation passed pursuant to R.C. 4729.26 makes a registered pharmacist subject to the draconian penalties mandated for certain violations of R.C. 2925.03. Instead, consistent with *State v. Sway, supra,* we believe that a pharmacist may be convicted for trafficking in drugs only where the pharmacist's conduct is so egregious that the dispensing of controlled substances is "not in the course of the bona fide treatment of a patient." *State v. Sway, supra,* syllabus. At a minimum, a pharmacist would have to be shown to have willfully and knowingly filled prescriptions which were false or forged, as barred by R.C. 4729.16(C)(3). The trial court should also consider other factors. If, for instance, Friedman knew that one or more of Bond's treating physicians would prescribe Demerol for Bond on demand (given Bond's physical maladies) and that filling these bogus prescriptions was no more than an accommodation to Bond, these facts might be relevant in determining whether Friedman's activity was or was not in the course of the bona fide treatment of a patient. Such other facts or factors tending to show that Friedman's conduct

*was* in accord with a course of bona fide treatment for Bond would likewise be admissible at trial.

As a result of the foregoing, the judgment of the Franklin County Court of Common Pleas is vacated and this cause is remanded for further proceedings consistent with this opinion.

*Judgment vacated*
*and cause remanded.*

McCORMAC and PETREE, JJ., concur.