[Cite as *State v. Evankovich*, 2010-Ohio-3157.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 09 MA 168 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| GARY EVANKOVICH | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 09 CR 38

JUDGMENT:     Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:

Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Atty. Martin P. Desmond
Assistant Prosecuting Attorneys
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellee:

Atty. Michael J. McGee
Harrington, Hoppe & Mitchell, Ltd.
108 Main Avenue, S.W., Suite 500
Warren, Ohio 44481

Atty. Harry R. Reinhart
Reinhart Law Office
One Americana, Suite 301
400 South Front Street
Columbus, Ohio 43215-5430

JUDGES:
Hon. Cheryl L. Waite

Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 29, 2010

WAITE, J.

{¶1} The State of Ohio appeals the decision of the Mahoning County Court of Common Pleas to dismiss the indictment in this case charging Appellee, Gary Evankovich, with twenty-four counts of selling dangerous drugs at retail between October 10, 2005 and June 15, 2006, in violation of R.C. 4729.51(C)(1), felonies of the fourth degree.

{¶2} Appellee, a local pharmacist, contracted with an online pharmacy to dispense prescription medication via the internet. Allegedly, prescriptions provided by the online pharmacy were not issued in accordance with Ohio laws and regulations, and, as a consequence, Appellee was charged with violating the dangerous drug statute. According to the indictment, Appellee unlawfully filled over ten thousand prescriptions for various drugs, including muscle relaxants, antibiotics, antidepressants, and antivirals, as well as drugs to treat anxiety and erectile dysfunction, over the course of an approximately seven month period.

{¶3} In a one-page judgment entry, the trial court held that Appellee, as a licensed terminal distributor of dangerous drugs, is exempt from criminal liability under the statute. For the following reasons, the judgment of the trial court is reversed and this matter is remanded for trial.

ASSIGNMENT OF ERROR

{¶4} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISMISSED APPELLEE'S INDICTMENT FOR TWENTY-FOUR COUNTS OF SELLING DANGEROUS DRUGS, IN VIOLATION OF R.C. §4729.51(C)(1), BECAUSE ITS CONCLUSION THAT APPELLEE WAS EXEMPT FROM CRIMINAL LIABILITY WENT BEYOND THE FACE OF THE INDICTMENT BY DECIDING FACTS THAT WERE INCAPABLE OF DETERMINING WITHOUT A TRIAL."

{¶5} The trial court predicated its dismissal of all of the charges in this case on the decision and judgment entry of the Montgomery County Court of Common Pleas acquitting a defendant charged with the same crimes and who was a licensed terminal distributor of dangerous drugs in *State v. Shelton* (February 6, 2009), 08-CR-1559. The Montgomery County Court relied on a series of arguments, both legal and, in the alternative, factual, to acquit Shelton following a bench trial on the matter. However, the trial court in the case sub judice clearly states in the judgment entry that it relied exclusively upon the legal conclusion in *Shelton* that "[t]he Defendant cannot be convicted under R.C. 4729.51(C)(1) since it does not apply to him pursuant to R.C. 4729.51(C)(4)." (9/30/09 J.E., p. 1.)

{¶6} This appeal involves the interpretation of a statute, which is an issue of law reviewed de novo on appeal without deference to the interpretation of the trial court. *State v. Best*, 7th Dist. No. 04MA203, 2005-Ohio-4375. The cornerstone of statutory interpretation is legislative intention. *State ex rel. Francis v. Sours* (1944), 143 Ohio St. 120, 124, 53 N.E.2d 1021, 1023. In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the

language of the statute itself. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 304 N.E.2d 378, 381. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465.

**{¶7}** To determine the intent of the General Assembly " '[i]t is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used.' " (Emphasis omitted.) *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 3, 387 N.E.2d 1222, 1224, quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9.

**{¶8}** A court may interpret a statute only where the words of the statute are ambiguous. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 27, 512 N.E.2d 332, 335. Ambiguity exists if the language is susceptible of more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 513, 668 N.E.2d 498, 504. If a statute is ambiguous, the court, in determining the intent of the General Assembly, may consider several factors, including the object sought to be obtained, the legislative history, and other laws upon the same or similar subjects. R.C. 1.49.

**{¶9}** Statutes defining criminal offenses and penalties are to be strictly construed against the state and liberally in favor of the accused. R.C. 2901.04(A). However, "[t]he canon in favor of strict construction of criminal statutes is not an

obstinate rule which overrides common sense and evident statutory purpose." *State v. Sway* (1984), 15 Ohio St.3d 112, 116, 472 N.E.2d 1065. "The canon is satisfied if the statutory language is given fair meaning in accord with the manifest intent of the General Assembly." Id. citing *United States v. Moore* (1975), 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333; *United States v. Brown* (1948), 333 U.S. 18, 25-26, 68 S.Ct. 376, 379-380, 92 L.Ed. 442.

{¶10} R.C. 4729.51(C) reads, in pertinent part:

{¶11} "(1) Except as provided in division (C)(4) of this section, no person shall sell, at retail, dangerous drugs.

{¶12} "* * *

{¶13} "(4) Divisions (C)(1)* * *of this section [does] not apply to a registered wholesale distributor of dangerous drugs, a licensed terminal distributor of dangerous drugs, or a person who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code."

{¶14} Chapter 3719. of the code is captioned "Controlled Substances," Chapter 4715 is captioned "Dentists," Chapter 4723. is captioned "Nurses," Chapter 4725. is captioned "Optometrists/Dispensing Opticians," Chapter 4729. is captioned "Pharmacists/Dangerous Drugs," Chapter 4730. is captioned "Physician Assistants," Chapter 4731. is captioned "Physicians/Limited Practitioners," and Chapter 4741. is captioned "Veterinarians."

**{¶15}** Attached to Appellee's motion to dismiss were three certificates issued by the Ohio State Board of Pharmacy, which establish that he was a licensed terminal distributor of dangerous drugs pursuant to Ohio law in 2005, 2006, and 2007.  At the hearing on the motion to dismiss, the trial court observed that the facts of the case establish that he is a licensed terminal distributor of dangerous drugs. (Hrg. Tr., p. 5.)

**{¶16}** As a matter of initial concern, the state argues that the trial court "stepped beyond the bounds of the criminal procedure rules" when it concluded that Appellee was a licensed terminal distributor of dangerous drugs.  (Appellant's Brf., p. 14.)  According to the state's argument, in order to be a licensed terminal distributor of dangerous drugs, a person must act in compliance with revised code chapters listed in R.C. 4729.51(C).  The state cites an Eighth District case, *State v. Lagunzad* (Nov. 4, 1982), 8th Dist. No. 43850 and 4407, for the proposition that "a pharmacist acts as a 'terminal distributor of dangerous drugs' *only when he 'is engaged in the [lawful] sale of dangerous drugs at retail."* (Emphasis added.)  Id. at *4, citing R.C. 4729.02(Q).

**{¶17}** The current version of the statute, R.C. 4729.01(Q), reads, in its entirety:

**{¶18}** " 'Terminal distributor of dangerous drugs' means a person who is engaged in the sale of dangerous drugs at retail, or any person, other than a wholesale distributor or a pharmacist, who has possession, custody, or control of dangerous drugs for any purpose other than for that person's own use and

consumption, and includes pharmacies, hospitals, nursing homes, and laboratories and all other persons who procure dangerous drugs for sale or other distribution by or under the supervision of a pharmacist or licensed health professional authorized to prescribe drugs."

**{¶19}** The state's licensing of terminal distributors of dangerous drugs is governed by R.C. 4729.54 and .55. Neither statute can be read to strip a licensed terminal distributor of dangerous drugs of its statutory identity because the distributor acts in contravention of Ohio law. There is no question that Appellee is a licensed terminal distributor of dangerous drugs pursuant to the statutory definition of that term, or that his pharmacies were registered with the state pursuant to R.C. 4729.54 and .55. Therefore, Appellant's argument with respect to Appellee's status as a licensed terminal distributor of drugs is misplaced.

**{¶20}** The trial court dismissed the indictment based on the conclusion that the statute exempts licensed terminal distributors of dangerous drugs from any criminal liability under the dangerous drug statute regardless of their compliance or lack thereof with Ohio laws and regulations governing the distribution of dangerous drugs. The state argues that R.C. 4729.51(C)(4) only applies to licensed terminal distributors of dangerous drugs that are acting in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code.

**{¶21}** Appellee is charged in each count of the indictment with acting in contravention of R.C. Chapters 4729 and 4731. Each count of the indictment

charges that Appellee's conduct, "was not in accordance with Chapters 4729. and 4731. of the Ohio Revised Code." (1/15/09 Indictment, passim.)

**{¶22}** The trial court's interpretation of the statute is grounded in the presumption that the phrase "in accordance with" modifies only the third group of exempt individuals. In other words, according to the trial court, an individual is exempted from criminal liability under the statute if he or she is (1) "a registered wholesale distributor of dangerous drugs"; (2) "a licensed terminal distributor of dangerous drugs"; or (3) "a person who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code."

**{¶23}** The *Shelton* Court adopted the same interpretation of the statute:

**{¶24}** "R.C. 4729.51(C) specifically lists three categories; the statute could have easily stated, since the entire provision relates to retail sales, that it does not apply to all persons who sell 'in accordance' with the Revised Code (the third category). Rather, it exempted three distinct groups and the Defendant is included in them." Id. at 3.

**{¶25}** The state argues that the trial court's interpretation of the statute is incorrect because it would be patently unreasonable to exempt from criminal liability a registered wholesale distributor or a licensed terminal distributor of dangerous drugs who is not acting in accordance with the very laws and regulations that authorize the distribution of dangerous drugs.

{¶26} The state asserts that the only reasonable interpretation of the statute is that the phrase, "who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code," modifies all three groups. In other words, an individual is exempted from criminal liability for the retail sale of dangerous drugs if he or she is either (1) "a registered wholesale distributor of dangerous drugs who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code"; (2) "a licensed terminal distributor of dangerous drugs who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code"; or (3) "a person who possesses, or possesses for sale or sells, at retail, a dangerous drug in accordance with Chapters 3719., 4715., 4723., 4725., 4729., 4730., 4731., and 4741. of the Revised Code."

{¶27} The foregoing interpretation of R.C. 4729.51(C) is consistent with a similar subsection of an Ohio criminal statute exempting from criminal prosecution those individuals involved in the lawful sale of controlled substances. The exemption in the trafficking offenses statute reads, in pertinent part, "[t]his section does not apply to any of the following: (1) Manufacturers, licensed health professionals authorized to prescribe drugs, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with Chapters 3719., 4715., 4723., 4729., 4730., 4731., and 4741. of the Revised Code * * *" R.C. 2925.03(B)(1).

{¶28} The Ohio Supreme Court has consistently held that physicians, as licensed health professionals, may be convicted of drug trafficking where the charged conduct is not in accordance with Ohio law. For instance, a physician who prescribed various quantities of percodan (oxycodone), methaqualone and dilaudid (hydromorphone) in exchange for sex was charged with seventeen counts of drug trafficking in *Sway*, supra. The trial court granted Sway's motion to dismiss the indictment, reasoning that Sway sold prescriptions, not controlled substances.

{¶29} On appeal, Sway argued that he could not be charged with drug trafficking, because statutes and regulations governing the conduct of licensed health professionals, specifically R.C. 3719.06, which sets forth requirements for the lawful prescription of drugs, immunized physicians from criminal prosecution for drug trafficking. In other words, Sway argued that he could only be charged with a violation of the Ohio law that regulated his conduct, rather than the drug trafficking statute. The Ohio Supreme Court rejected the argument, holding instead that the physician's actions "departed from the minimal standards of his profession," Id. at 114, and "[a] physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03." Id. at syllabus.

{¶30} Appellee contends, in an argument similar to the defendant in *Sway*, that the state's interpretation of the dangerous drug statute, "ignores the entire body of Ohio administrative law enacted and promulgated by the Ohio Pharmaceutical Board to account for such agency intent, and further ignores that a readily available

administrative setting is in place to adjudge Defendant Evankovich's alleged conduct as a pharmacist." (Appellee's Brf. at p. 4.) In other words, Appellee believes that the most stringent punishment allowable by law for violations of the statute is that a violator's license may be revoked.

**{¶31}** However, the Ohio Supreme Court clearly rejected the notion that the state is limited to civil penalties for drug crimes in *Sway.* In response to the argument that the physician in that case was not criminally liable for drug trafficking because he sold prescriptions rather than narcotic drugs, the Supreme Court stated, "[i]t is contrary to the dictates of public policy to claim that the General Assembly did not intend to exercise some degree of restraint in R.C. 2925.03(A) over the class of society which has almost unlimited access to the drugs sought to be controlled by the statute." Id. at 115. The same rationale can be applied to R.C. 4729.51(C).

**{¶32}** In response to the argument that the drug trafficking statute at issue in *Sway* was sufficiently ambiguous such that it must be strictly construed against the state, the Ohio Supreme Court, recognizing the practical limitations of the canon, held:

**{¶33}** "R.C. 2925.03 demonstrates a clear legislative intent to prohibit the unlawful commerce of controlled substances. The statute criminalizes participation at all levels of the commerce of illicit drugs. *Patterson, supra.* In cases such as the one before us, the unlawful commerce of drugs begins at the physician's doorstep. The unlawful prescription plays a principal part in the distribution of narcotic drugs.

{¶34} "We do not believe the statute was intended to place immunity on a registered physician who sells a prescription to satisfy the craving of one addicted to the drug. A physician who flagrantly disregards his sworn professional obligation by allowing large quantities of dangerous drugs to enter illicit channels is no less a criminal than the layperson on the street who sells the same." Id. at 116.

{¶35} Based on the foregoing analysis of the legislative intent behind R.C. 2925.03, it is wholly unreasonable to suggest that the General Assembly would exempt individuals from the dangerous drug statute even though they are acting in contravention of the very statutes that legalize their conduct, but that the legislature would not carve out the same exception in the trafficking statute.

{¶36} In fact, Appellee has not articulated any reason that dangerous drugs should be treated differently than controlled substances, but for his counsel's assertion at oral argument that no individual would become a pharmacist if he or she knew that they could face criminal liability for dispensing drugs. It is clear from the body of caselaw that has developed under R.C. 2925.03 that pharmacists whose conduct is not in conformance with the Revised Code sections listed in that statute have been subject to criminal liability for filling prescriptions in violation of Ohio laws and regulations for at least two decades. Consequently, Appellee's policy argument lacks merit.

{¶37} Finally, Appellee asserts that he is immune from prosecution pursuant to R.C. 4729.51(C)(4). In fact, the Ohio Supreme Court has recently held that the inapplicability of the licensed terminal distributor exception is an element of the

state's case. In *State v. Nuckols*, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, a licensed physician, who was convicted of ten counts of drug trafficking after prescribing pain medication without maintaining proper documentation required by Ohio Adm.Code 4731-21-02, argued on appeal that the trial court improperly instructed the jury that R.C. 2925.03(B)(1) is an affirmative defense.

**{¶38}** The Ohio Supreme Court agreed, holding that, "the state bears the burden of proving beyond a reasonable doubt the inapplicability of the licensed-health-professional exception in R.C. 2925.03(B)(1) by submitting evidence that the licensed health professional violated statutes or regulations that define the standard of care for dispensing controlled substances." Id. at syllabus. Consequently, Appellee's immunity argument premised on R.C. 4729.51(C)(4) fails in the face of the Supreme Court's analysis of the parallel provision in the drug trafficking statute.

**{¶39}** The *Nuckols* Court cited *Sway* as controlling authority, and wrote in dicta, "[w]e do not believe that the General Assembly intended to criminalize legitimate medical treatment. Rather, we believe that the General Assembly consciously avoided such an absurd result by stating that trafficking in drugs 'does not apply' to licensed health professionals *who comply with applicable statutory or regulatory requirements.*" (Emphasis added.) Id. at ¶19

**{¶40}** The same is true here. Admittedly, the statute, like the controlled substances statute, may be seen as susceptible to an unreasonable interpretation that would result in absolute immunity from criminal prosecution for licensed terminal distributors of dangerous drugs, regardless of whether the individual has knowingly

violated Ohio statutory and regulatory requirements. However, the public policy argument that regulatory boards are vested with the exclusive authority to police the conduct of professionals licensed by those boards was soundly rejected in *Sway*.

**{¶41}** Based upon the Ohio Supreme Court's holding in *Sway,* two appellate courts have held that pharmacists can be charged with drug trafficking. *State v. Friedman* (1991), 70 Ohio App.3d 262, 590 N.E.2d 909; *State v. Poleyeff* (May 13, 1993), 8th Dist. Nos. 62319, 62320. In *Freidman,* a pharmacist, who had filled prescriptions for Demerol for a paraplegic with longstanding medical problems for approximately ten years, was charged with drug trafficking when he filled three Demerol prescriptions for which the amount had been forged by the customer. *Freidman* at 263. In *Poleyeff,* a retired pharmacist, who worked two days a week to supplement his retirement income, was charged with drug trafficking after he filled thirty-six prescriptions for Desoxyn, an amphetamine prescribed for weight loss, for fifteen different patients over the course of two years. *Poleyeff* at *1. In *Poleyeff*, the state relied upon expert testimony that very few doctors prescribed Desoxyn due to its potential for abuse, and that prescribing the drug for more than six to eight weeks fell below medical standards. Id. at *2. Based upon federal caselaw, experts further testified that a pharmacist has a "corresponding responsibility" to fill prescriptions only in the course of legitimate medical treatment. Id.

**{¶42}** The *Friedman* Court reasoned that the legislature did not intend for every technical violation of a provision in Chapter 4729 or of a regulation passed pursuant to R.C. 4729.26 to subject a registered pharmacist to the "draconian

penalties mandated for certain violations of R.C. 2925.03." Id. at 267. Accordingly, both the Tenth and Eighth Districts defined the requisite state of mind to be proven when a pharmacist is charged with a violation of R.C. 2925.03 as follows:

{¶43} "[A] pharmacist may be convicted for trafficking in drugs only where the pharmacist's conduct is so egregious that the dispensing of controlled substances is 'not in the course of bona fide treatment of a patient.' ... At a minimum, a pharmacist would have to be shown to have willfully and knowingly filled prescriptions which were false or forged, as barred by R.C. 4729.16(C)(3)." *Poleyeff* at *2, quoting with favor *Friedman* at 267.

{¶44} In summary, the only reasonable reading of the dangerous drug statute supports the conclusion that all of the exempt classes of individuals listed in R.C. 4729.51(C)(4) must act in conformance with the code chapters listed in that statute in order to qualify for the exemption. The trial court's interpretation of the statute would exempt registered wholesale distributors and licensed terminal distributors of dangerous drugs from criminal liability for selling dangerous drugs regardless of whether they knowingly violated Ohio laws and regulations promulgated by the Board of Pharmacy and set forth in the Ohio Administrative Code. The trial court's interpretation of the statute would foreclose any and all criminal liability without regard to the egregiousness of the licensed terminal distributor's conduct, whether based on the volume of drugs sold, the manner in which they are sold, or the consumer of the drugs.

**{¶45}** The trial court's interpretation of the dangerous drug statute is also inconsistent with the Ohio Supreme Court's interpretation of the drug trafficking statute, which requires all individuals to act in conformance with the revised code chapters listed in that statute to qualify for the exemption. Appellee's argument that the only sanction available is a civil penalty imposed by the Board of Pharmacy is in direct conflict with the Ohio Supreme Court's conclusion in *Sway*, supra, that the General Assembly did not intend to abdicate all control in the drug trafficking statute "over the class of society which has almost unlimited access to the drugs sought to be controlled by the statute." Id. at 115. Accordingly, Appellant's sole assignment of error is sustained, the judgment of the trial court is reversed, and the case is remanded for trial.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.