THE STATE OF OHIO, APPELLANT, *v.* SWAY, APPELLEE.

[Cite as State *v.* Sway (1984), 15 Ohio St. 3d 112.]

(No. 84-383—Decided December 31, 1984.)

*Mr. Arthur M. Ney, Jr.*, prosecuting attorney, and *Mr. William E. Breyer*, for appellant.

*Bauer, Morelli & Heyd Co., L.P.A.*, and *Mr. Arnold Morelli*, for appellee.

HOLMES, J. In this appeal, we are asked to determine whether a physician who unlawfully issues prescriptions knowing that they will be used for illicit drug trafficking can be found guilty of a criminal "sale" under R.C. 2925.03(A)(1). A majority of the appellate court answered this query in the negative. However, based on the following, we reverse.

Our analysis begins by reviewing the statutory provisions in question. R.C. 2925.03(A) states in pertinent part:

"No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount as defined in section 2925.01 of the Revised Code; * * *"

For the purposes of R.C. 2925.03, "sale" is defined by R.C. 3719.01(EE) to include delivery, barter, exchange, transfer, gift, or offer thereof.

We have no problem in finding, and the parties do not question, that a "sale" took place here. If the allegations are proven, then the exchanges of prescriptions in return for sex would constitute "sales" under R.C. 3719.01(EE). Thus, the debating point is whether the sale of prescriptions is equivalent to the sale of illicit drugs in violation of R.C. 2925.03.

Initially, appellee contends that certain provisions of the state's drug offense laws preclude this court from finding a physician criminally liable under R.C. 2925.03(A)(1). It is appellee's view that only R.C. 2925.23 and 3719.06(A) regulate a physician's liability for the unlawful prescription of controlled substances. We disagree.

A study of the overall legislative scheme concerning drug offenses is beneficial. Originally, some provisions now within R.C. Chapter 2925 were a part of R.C. Chapter 3719. In an attempt to strengthen prior laws, the General Assembly enacted a comprehensive drug abuse statute currently comprised in R.C. Chapter 2925. Now, R.C. Chapter 3719 only contains what is known as the Uniform Controlled Substances Act.

Turning to appellee's argument, R.C. 2925.23 prohibits the illegal processing of drug documents. The statute forbids false or forged prescriptions, or theft of prescription forms. We are of the opinion that R.C. 2925.23 specifically deals with obtaining a drug from an unsuspecting physician by fraud, theft, or deceit — not procuring a controlled substance from a knowing physician who is acting outside the bounds of his profession.

R.C. 3719.06 specifies the standards and dispensing procedures for physicians in prescribing and administering medication which is listed as a controlled substance. The provision requires a licensed practitioner to include information on the prescription form such as the date of issuance, and the full name and address of the individual receiving the medication. The statute merely addresses the contents of a prescription and it does not speak to the unlawful transfer of a prescription. Furthermore, the penalties for a violation of the statute could hardly have been deemed by the General Assembly to be an appropriate sanction for drug trafficking by a registered physician.

This rationale is further supported by R.C. 2925.03(B) which states that a practitioner is not liable for drug trafficking under subsection (A)(1), (3) or (4) of the statute if his conduct is in accord with the regulations contained in, *inter alia,* R.C. Chapters 3719 and 4731. Reading the provision conversely, we believe that if a physician does not act in accordance with such regulations he is subject to criminal liability under R.C. 2925.03(A) when his actions fall therein. It is patently clear from the facts presented that Dr. Sway did not conform to the directives specifically set forth in R.C. 4731.22 as he departed from the minimal standards of his profession when he unlawfully prescribed the illicit drugs in question. Thus, we are unable to find any statutory provision which would preclude us from finding appellee liable under R.C. 2925.03(A).

This court has recently interpreted R.C. 2925.03(A)(1) on two separate occasions. In *State* v. *Scott* (1982), 69 Ohio St. 2d 439 [23 O.O.3d 390], the defendant represented to an undercover agent that he was selling amphetamines when, in fact, the tablets did not contain any trace of the drug. In writing for the majority, Justice Locher noted that the nature of the substance delivered does not necessarily determine whether an individual has offered to sell an illegal narcotic. Thus, we held that "[a] person can 'offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer." *Id.* at the syllabus. The General Assembly codified our ruling in R.C. 2925.37.

Also, in *State* v. *Patterson* (1982), 69 Ohio St. 2d 445 [23 O.O.3d 394], this court relied on the *Scott* rationale and held that the failure to physically deliver a controlled substance is not an absolute defense to an indictment alleging a violation of R.C. 2925.03(A). We specifically stated that a "[f]ailure to deliver [a drug] does not *ipso facto* exonerate the accused." *Id.* at 447.

From a reading of *Scott* and *Patterson,* it is clear that an individual does not have to actually deliver the physical substance to violate the statute. Based on this, we believe that the sale of a completed prescription form is sufficiently analogous to the sale of an illicit drug as to warrant the same conclusion.

A physician cannot insulate himself from criminal liability by arguing that he sold an unlawful prescription, instead of a narcotic drug. The General Assembly did not intend such a distinction. Whether a doctor sells a prescription for the drug or sells the drug itself, the result is the same: the unlawful commerce of a controlled substance. It is contrary to the dictates of public policy to claim that the General Assembly did not intend to exercise some degree of restraint in R.C. 2925.03(A) over the class of society which has almost unlimited access to the drugs sought to be controlled by the statute.

Therefore, we hold that a physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03.

Our conclusion reached today is supported by other state and federal jurisdictions. It was established by the United States Supreme Court in *Jin Fuey Moy* v. *United States* (1920), 254 U.S. 189, that "selling" within the meaning of the now superseded Harrison Anti-Narcotic Act was not solely confined to the parting of one's own property. Rather, the court held that a physician may participate in a sale of illicit drugs by unlawfully issuing a prescription to another individual who effects the sale. *Id.* at 194. Most federal courts follow *Jin Fuey Moy* in cases dealing with the more recently enacted federal Controlled Substances Act (Section 801 *et seq.,* Title 21, U.S. Code). This line of authority states that a doctor may be con-

victed for the unlawful dispensing of a controlled substance if the prescription is not for a legitimate medical purpose.[1]

The overwhelming number of states addressing this issue have upheld the convictions of physicians under their respective statutes for the sale or delivery of a written prescription. *Commonwealth* v. *Comins* (1976), 371 Mass. 222, 356 N.E. 2d 241, certiorari denied (1977), 430 U.S. 946; *State* v. *Moody* (La. 1981), 393 So. 2d 1212; *People* v. *Alford* (1979), 405 Mich. 570, 275 N.W. 2d 484; *State* v. *Weeks* (Fla. 1976), 335 So. 2d 274; *Anderson* v. *State* (1973), 231 Ga. 243, 201 S.E. 2d 147. We are aware of only one jurisdiction, New York, which holds to the contrary. It is interesting to note, however, that the state of New York has two pertinent statutory provisions: one that prohibits the unlawful sale of drugs (N.Y. Penal Law [Consol. 1973], Section 220.31 *et seq.*), and another which prohibits the unlawful prescribing of narcotic drugs (N.Y. Public Health Law [Consol. 1972], Section 3304). Accordingly, courts in New York must find a physician guilty under the latter statute when he sells an unlawful prescription.

Appellee finally argues that the statute is sufficiently ambiguous so that it must be strictly construed against the state. Appellee relies on R.C. 2901.04(A) and cases decided thereunder.

The canon in favor of strict construction of criminal statutes is not an obstinate rule which overrides common sense and evident statutory purpose. The canon is satisfied if the statutory language is given fair meaning in accord with the manifest intent of the General Assembly. *United States* v. *Moore* (1975), 423 U.S. 122, 145; *United States* v. *Brown* (1948), 333 U.S. 18, 25-26.

R.C. 2925.03 demonstrates a clear legislative intent to prohibit the unlawful commerce of controlled substances. The statute criminalizes participation at all levels of the commerce of illicit drugs. *Patterson, supra.* In cases such as the one before us, the unlawful commerce of drugs begins at the physician's doorstep. The unlawful prescription plays a principal part in the distribution of narcotic drugs.

We do not believe the statute was intended to place immunity on a registered physician who sells a prescription to satisfy the craving of one addicted to the drug. A physician who flagrantly disregards his sworn professional obligation by allowing large quantities of dangerous drugs to enter illicit channels is no less a criminal than the layperson on the street who sells the same.

---

[1] *United States* v. *Thompson* (C.A.5, 1980), 624 F. 2d 740; *United States* v. *Dunbar* (C.A.5, 1980), 614 F. 2d 39; *United States* v. *Millen* (C.A.6, 1979), 594 F. 2d 1085; *United States* v. *Kirk* (C.A. 6, 1978), 584 F. 2d 773; *United States* v. *Jackson* (C.A. 5, 1978), 576 F. 2d 46; *United States* v. *Roya* (C.A.7, 1978), 574 F. 2d 386; *United States* v. *Fellman* (C.A.10, 1977), 549 F. 2d 181; *United States* v. *Hooker* (C.A.1, 1976), 541 F.2d 300; *United States* v. *Rosenberg* (C.A.9, 1975), 515 F. 2d 190; *United States* v. *Green* (C.A.7, 1975), 511 F.2d 1062; *United States* v. *Badia* (C.A.1, 1973), 490 F. 2d 296; *United States* v. *Leigh* (C.A.5, 1973), 487 F. 2d 206; *United States* v. *Bartee* (C.A.10, 1973), 479 F. 2d 484; *United States* v. *Collier* (C.A.5, 1973), 478 F. 2d 268.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed.*

SWEENEY, LOCHER and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

W. BROWN and C. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. I respectfully dissent. R.C. 2925.03(A) provides in relevant part that "[n]o person shall knowingly * * * (1) [s]ell or offer to sell a controlled substance * * *." It is incumbent upon this court to remain ever mindful of the rule of construction contained in R.C. 2901.04(A) which provides that "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

The majority, in finding that the sale of a prescription is punishable under R.C. 2925.03(A)(1), fails to acknowledge this legislative directive. R.C. 2925.03(A)(1) criminalizes the sale of a controlled substance which is defined as a drug, compound, mixture, preparation or substance included in Schedules I, II, III, IV or V (R.C. 3719.01[D]). A written prescription order form is notedly not included within the definition of a controlled substance. Moreover, and, strictly speaking, as mandated by R.C. 2901.04(A), a prescription form is simply not a controlled substance. The difference between a drug itself and a prescription form is self-evident.

If the General Assembly had intended to criminalize the sale of a written prescription form, it could have so specified. This was likewise recognized in the dissenting opinions in *State* v. *Scott* (1982), 69 Ohio St. 2d 439, 443 [23 O.O.3d 390], and *State* v. *Patterson* (1982), 69 Ohio St. 2d 445, 452 [23 O.O.3d 394].

C. BROWN, J., concurs in the foregoing dissenting opinion.