OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Yitzchak E. Gold, Assistant Court
Reporter.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

     The State of Ohio, Appellant, v. McCarthy, Appellee.
     [Cite as State v. McCarthy (1992),     Ohio St.3d    .]
Criminal law -- Prosecution of physician for alleged violations
     of R.C. Chapter 2925 -- Trial court commits reversible
     error when it refuses to give requested jury instruction
     that permits jury to consider physician's subjective state
     of mind, as well as objective criteria, in determining
     whether physician's actions were performed in bona fide
     treatment of patient -- R.C. 2925.03(B), construed.
In the prosecution of a physician for alleged violations of R.C.
     Chapter 2925, a trial court commits reversible error when
     it refuses to give a requested jury instruction that
     permits the jury to consider the physician's subjective
     state of mind, as well as objective criteria, in
     determining whether the physician's actions were performed
     in the course of the bona fide treatment of a patient.
     (R.C. 2925.03[B], construed; State v. Sway [1984], 15 Ohio
     St.3d 112, 15 OBR 265, 472 N.E.2d 1065, followed.)
     (No. 91-2132 -- Submitted October 14, 1992 -- Decided
December 31, 1992.)
     Appeal from the Court of Appeals for Montgomery County,
No. 12123.
     Defendant-appellee, Thomas H. McCarthy, is a doctor of
osteopathy with an office in Dayton.  On August 22, 1989,
defendant was indicted by the grand jury on fifty counts of
aggravated trafficking in drugs (R.C. 2925.03), three hundred
seventy-seven counts of trafficking in drugs (R.C. 2925.03),
thirty-five counts of illegal processing of a drug document
(R.C. 2925.23), one count of corrupting another with drugs
(R.C. 2925.02), and one count of engaging in a pattern of
corrupt activity (R.C. 2925.02).
     On November 14, 1989, a second indictment charged
defendant with an additional thirteen counts of trafficking in
drugs, one count of illegal processing of a drug document, and
three more counts of corrupting another with drugs.
     The indictments charged that defendant improperly
prescribed and dispensed Ritalin (Schedule II drug); Didrex and
UMI-STAT (Schedule III drugs); Adipex-P and Ionamin (Schedule

IV drugs).

A jury trial was held wherein defendant testified that he had prescribed drugs as diet medication for weight loss in addition to any diet and exercise programs he had recommended to his patients.  Sometime during the trial, the court held a conference in chambers with counsel for the parties to discuss the jury charge.  One of the issues discussed was defendant's proposal that the jury be provided with a definition of "bona fide" in the context of whether defendant's prescribing of drugs was for the bona fide treatment of a patient.[1]  The court refused to instruct the jury on a definition of "bona fide" because it believed that such an instruction would tend to mislead the jury.[2]

The jury found defendant guilty of fifty counts of aggravated trafficking, two hundred sixty-one counts of trafficking, twenty-five counts of illegal processing of drug documents, and two counts of corrupting another with drugs. Defendant was acquitted on all other charges.

On March 12, 1990, prior to sentencing, the trial court declined to enter judgment of conviction on the counts relating to illegal processing of drug documents on the ground that they were allied offenses of similar import to some of the trafficking convictions.  In addition, the trial court dismissed thirteen of the trafficking counts upon partial granting of defendant's motion for a mistrial as to those counts.  Subsequently, defendant was fined and sentenced with respect to the remaining counts upon which he was convicted.

Upon appeal, the court of appeals reversed and discharged defendant on the two counts of corrupting another with drugs, and reversed and remanded as to the remaining counts.  The appellate court noted the trial court's reliance on State v. Sway (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, and concluded that the jury instructions given were unsatisfactory:

"The trial court closely followed Sway in formulating its charge on the definition of bona fide.  The trial court instructed the jury to consider the applicable statutes and rules for purposes of assessing whether McCarthy's prescribing practices were bona fide.  The trial court cautioned the jury that a violation of the statutes and rules alone did not warrant the loss of the exemption because the State had to prove every element of the offense.  Notwithstanding this caveat, the instruction was nevertheless, in our judgment, too restrictive.  The instruction limited the determination of bona fide treatment solely to the consideration of whether McCarthy complied with the statutes and rules, and whether the State had otherwise proved the essential elements of the offenses.  Thus, the instruction allowed the jury to conclude that any deviation from the cited statutes and rules, no matter how slight, would have amounted to a lack of bona fide medical treatment sufficient to negate the exemption, and to impose criminal liability.

"Clearly, evidence that a physician has prescribed or dispenses controlled substances in a manner contrary to regulations enacted pursuant to R.C. Chapter 3719 and 4731 is evidence tending to establish a lack of bona fide treatment. In our view, however, a slight deviation from those regulations

would not necessarily warrant the severe consequence of criminal liability, and that under Sway, the jury must consider the subjective state of mind of a physician charged with violating Chapter 2925. McCarthy's proposed definition of 'bona fide' would have allowed the jury to do so. Refusing to define 'bona fide' had the opposite effect.

"We thus conclude that McCarthy's proposed instruction defining 'bona fide' contained an accurate, and necessary, statement of the law, and, therefore, should have been included in the court's charge to the jury."

The cause is now before this court pursuant to the allowance of a motion for leave to appeal.

Lee C. Falke, Prosecuting Attorney, and Lorine M. Reid, Assistant Prosecuting Attorney, for appellant.

Flanagan, Lieberman, Hoffman & Swaim, Dennis A. Lieberman and Richard Hempfling, for appellee.

Ronald L. Collins, Tuscarawas County Prosecuting Attorney, urging reversal for amicus curiae, Ohio Prosecuting Attorneys' Association.

Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., and John S. Pyle, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.

A. William Sweeney, J. The crucial issue posed in this appeal is whether the trial court erred to the prejudice of defendant in refusing to provide the jury with a definition of "bona fide" in determining whether any of defendant's actions were performed in the course of the bona fide treatment of a patient. Since we believe the trial court erred in refusing to provide the jury with a definition of "bona fide," we affirm the judgment of the court of appeals below.

The version of R.C. 2925.03 applicable to this action provided in relevant part:

"(B) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with Chapters 3719., 4715., 4729., 4731., and 4741. of the Revised Code." (Now renumbered R.C. 2925.03[B][1].)

In State v. Sway (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, this court held in the syllabus:

"A physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03."

The plaintiff-appellant, state of Ohio, argues that the term "bona fide" is in general usage and that its overall definition is known to the average layperson. The state contends that in determining whether the conduct of a physician constitutes bona fide medical treatment, the jury must not consider the physician's subjective state of mind, but rather it must consider whether the physician's conduct was in accordance with the standards of medical practice established by regulations set forth in, inter alia, R.C. Chapters 3719 and 4731.

Defendant and amicus, Ohio Association of Criminal Defense Lawyers, essentially argue that under this court's decision in

Sway, supra, a jury instruction in a prosecution of a physician-practitioner for alleged violations of R.C. Chapter 2925 should focus the jury's attention on the physician's subjective state of mind as well as objective criteria in order to determine whether a physician's actions were performed in the course of the bona fide treatment of a patient.

In Cincinnati v. Epperson (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785, this court held in the first paragraph of the syllabus:

"In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge. (State v. Barron, 170 Ohio St. 267 [10 O.O.2d 299, 164 N.E.2d 409], followed.)"  Accord State v. Nelson (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, paragraph one of the syllabus.  See, also, State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640.

In our view, the court of appeals below was correct in holding that the trial court erred in not instructing the jury on the meaning of "bona fide," because defendant's proposed instruction, as set forth in footnote 1, satisfied the requirements of Epperson, supra, and other like precedents. Moreover, the trial court's charge to the jury, as set forth in footnote 2, was unsatisfactory because it required the jury to limit its inquiry to simply whether defendant had complied with the statutes and rules regulating the conduct of physicians in prescribing or dispensing controlled substances.

Defendant's proposed instruction on the definition of "bona fide," on the other hand, would have led the jury to consider defendant's subjective state of mind, i.e., his intent, in determining whether his actions constituted criminal conduct under the law.  The statutory scheme of R.C. Chapter 2925 does not and cannot make mere negligence in the prescribing of drugs a crime.  Criminal intent must be shown in order to support a conviction thereunder.  Thus, we reject the state's argument that a physician's subjective state of mind is largely irrelevant in determining whether a physician's actions occurred in the course of the bona fide treatment of a patient.

Likewise, we reject the state's assertion that the term "bona fide" needs no elucidation or definition in a criminal prosecution under R.C. Chapter 2925.  Given our holding in Sway, supra, and in light of the statutes and rules governing a physician-practioner's conduct in the prescribing and dispensing of controlled substances, we find the term "bona fide" in this context to be akin to such legally important terms as "knowingly," "intentionally" or "purposely," which are otherwise familiar to lay persons, but which are also universally defined in jury instructions in criminal prosecutions throughout the country.

Our holding herein parallels those decisions from other jurisdictions which have held that a physician-practitioner's subjective state of mind must be shown, where the prosecution attempts to prove that the prescription of controlled substances goes beyond the realm of legitimate medical treatment into the area of criminal conduct.  See, e.g., People v. Downes (1975), 394 Mich. 17, 228 N.W.2d 212 (physician); Commonwealth v. Comins (1976), 371 Mass. 222, 356 N.E.2d 241

(osteopath); and State v. Young (1991), 185 W.Va. 327, 406 S.E.2d 758 (dentist).

In addition, standardized federal jury instructions contain a good-faith test applicable in federal prosecutions of physicians brought under Section 841(a)(1), Title 21, U.S.Code. See Sand, Siffert, Loughlin & Reiss, 2 Modern Federal Jury Instructions (1992) 56-43 and 56-48, Instructions 56-19 and 56-20, Paragraph 56.02.

Consequently, inasmuch as the trial court did not charge the jury with the proposed instruction proffered by defendant, which would have permitted the jury to consider defendant's subjective state of mind in considering the criminality, or lack thereof, of defendant's conduct, the court of appeals correctly reversed the multiple convictions rendered against defendant.

Based on all the foregoing, we adhere to our prior decision in Sway, supra, and construe the exemption for physician-practitioners set forth in R.C. 2925.03(B), by holding that in the prosecution of a physician for alleged violations of R.C. Chapter 2925, a trial court commits reversible error when it refuses to give a requested jury instruction that permits the jury to consider a physician's subjective state of mind, as well as objective criteria, in determining whether the physician's actions were performed in the course of the bona fide treatment of a patient.

Accordingly, the judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

Moyer, C.J., Douglas and H. Brown, JJ., concur.
Holmes, Wright and Resnick, JJ., dissent.

FOOTNOTES:

1 Defendant's "Proposed Jury Instruction No. 20" contained a request that the trial court give the following definition: "'Bona fide' means in or with good faith; honestly, openly, and sincerely; without deceit or fraud."

As pointed out by the court of appeals below, defendant's definition of "bona fide" comports with the commonly accepted definition of the term as found in Black's Law Dictionary.

2 In this context, the trial court instructed the jury in pertinent part as follows:

"Let's begin with the area of trafficking and aggravated trafficking. The defendant is charged with several counts of trafficking in drugs and aggravated trafficking in drugs.

"A physician who lawfully prescribes or dispenses a controlled substance in the course of the bona fide treatment of a patient is exempt from the provisions of law concerning trafficking and aggravated trafficking in drugs. But a physician who unlawfully prescribes or dispenses a controlled substance not in the course of bona fide treatment of a patient is guilty of selling a controlled substance in violation of the provisions of law concerning trafficking and aggravated trafficking in drugs.

"Now, before you can find the defendant guilty of any such charge, you must find beyond a reasonable doubt that on or about the date specified in such charge--and at a later time I will go over with you the aspect of the multiple counts of

these charges; for now, I am reading this to you in a general form--that on or about the date specified in such charge and in Montgomery County, Ohio, the defendant knowingly sold the controlled substance specified in such charge in the bulk amount specified in such charge and that such sale was not in the course of the bona fide treatment of a patient.

"***

"In the course of a bona fide treatment of a patient. [Sic.] For purposes of determining whether the defendant was or was not acting in the course of the bona fide treatment of a patient, the following statutes and rules regulating the conduct of physicians may be used, but this phrase is only one element of the crimes of trafficking in drugs and aggravated trafficking in drugs.

"If a physician does not act in accordance with such statutes or rules, that fact alone does not necessarily mean that the physician has lost his exemption for the provision of the law concerning trafficking in drugs or aggravated trafficking in drugs. The defendant must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the crimes of trafficking in drugs and aggravated trafficking in drugs. ***"

Wright, J., dissenting. This case involves a narrow issue of statutory interpretation: whether a physician can be exempt from criminal liability for drug trafficking if he or she prescribes a controlled substance in subjective "good faith." Because the plain language of R.C. 2925.03(B)(1) exempts physicians from criminal liability only if they act "in accordance with" objective requirements set forth in specific sections of the Revised Code and the Ohio Administrative Code, I would hold that a physician's subjective "good faith" is not sufficient to entitle him or her to the statutory exemption. Therefore, I dissent from the majority's conclusion that the jury should have been permitted to consider McCarthy's subjective state of mind.

R.C. 2925.03(A) prohibits the sale of controlled substances. R.C. 2925.03(B)(1) creates a specific exemption to that general prohibition for physicians acting in the course of their practice. It provides in part:

"(B) This section does not apply to the following: (1) Manufacturers, practitioners, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with Chapters 3719. *** and 4731. *** of the Revised Code ***[.]"3 (Emphasis added.)

R.C. Chapters 3719 and 4731, along with Ohio Adm. Code Chapter 4731-11, in part govern the dispensation of drugs by physicians. Ohio Administrative Code Chapter 4731-11 is particularly important because it deals specifically with controlled substances. These statutes and regulations create a series of procedural requirements physicians must satisfy before they are permitted to prescribe controlled substances. In State v. Sway (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, the court considered R.C. 2925.03 as applied to a physician. The court looked specifically at the physician's exemption in R.C. 2925.03(B)(1). Justice Holmes, for a unanimous court, wrote: "*** [W]e believe that if a physician

does not act in accordance with such regulations [R.C. Chapters 3719 and 4731] he is subject to criminal liability under R.C. 2925.03(A) when his actions fall therein.  It is patently clear from the facts presented that Dr. Sway did not conform to the directives specifically set forth in R.C. 4731.22 ***.  Thus, we are unable to find any statutory provision which would preclude us from finding appellee liable under R.C. 2925.03(A)."  Sway, 15 Ohio St.3d at 114, 15 OBR at 267, 472 N.E.2d at 1067.  Later in the opinion this statement was capsulized by the court in holding that physicians are criminally liable for selling controlled substances if the sale is "not in the course of the bona fide treatment of a patient."  Id. at 115, 15 OBR at 268-269, 472 N.E.2d at 1068.

At the core of today's case is a dispute over the proper definition of the term "bona fide," as used in Sway.  There appear to be two alternatives:  "good faith," as argued by McCarthy, and "in accordance with" R.C. Chapters 3719 and 4731 as stated in R.C. 2925.03(B)(1).

McCarthy argued and the court of appeals below agreed that "bona fide" means "good faith" and the jury must be instructed that a doctor cannot be convicted of violating R.C. 2925.03 if his or her treatment was in good faith.  In its opinion, the court of appeals admittedly read Sway's holding expansively. It believed that Sway meant "that a physician loses the exemption when he prescribes controlled substances for purposes other than bona fide treatment," and that "bona fide" necessarily means "good faith."  I disagree.

Although "bona fide" is often understood to mean "good faith," neither Sway nor R.C. 2925.03(B)(1) mandates a "good faith" standard for the physician's exemption.  The plain language of R.C. 2925.03(B)(1) states that a physician is only exempt from criminal liability if he or she acts "in accordance with" R.C. Chapters 3719 and 4731 when prescribing or dispensing controlled substances.  These statutes and the attendant regulations in Ohio Adm. Code Chapter 4731-11 are simple and clear: they require physicians to maintain proper records; take certain precautions; and act, in short, as reasonable physicians would in the same circumstances.  These black and white requirements protect legitimate doctors from reproach and protect society from illegitimate doctors who would use their positions to distribute controlled substances with impunity.  The existence of objective criteria makes the line between legitimate treatment and drug trafficking very easy for both physicians and officials in the criminal justice system to discern.  Because objective criteria are so desirable, nowhere in R.C. Chapters 3719 and 4731, or in Ohio Adm. Code Chapter 4731-11, is there stated a good faith standard for prescribing controlled substances.  The General Assembly wisely decided that the subjective intent of a physician prescribing controlled substances is not relevant in determining whether a physician's actions are in accord with the law.

Sway is not inconsistent with the plain language of R.C. 2925.03(B)(1).  I read the holding of Sway to equate the term "bona fide" to this statutory provision that physicians must act "in accordance with" R.C. Chapters 3719 and 4731.  I do not accept the majority's conclusion that "bona fide" in all

circumstances means "good faith" because this conclusion ignores the statute's plain language.

The instructions given to the jury in this case were correct. Holding a physician to an objective professional standard rather than a subjective "good faith" standard does not, as McCarthy argued, undermine the mens rea requirement of drug trafficking. The state still must prove that the defendant knowingly and intentionally sold illegal drugs. Moreover, the state must prove beyond a reasonable doubt that the defendant-physician knowingly sold those drugs without complying with the statutes and regulations which define professional conduct.

Accordingly, I would reverse the court of appeals and reinstate McCarthy's convictions.

Holmes and Resnick, JJ., concur in the foregoing dissenting opinion.

FOOTNOTE:
3 Of the four Revised Code chapters specified in R.C. 2925.03(B)(1), only Chapters 3719 and 4731 apply to physicians.