[Cite as *State v. Wooster*, 2012-Ohio-4439.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                          :
                                       :       Appellate Case No. 24855
            Plaintiff-Appellee         :
                                       :       Trial Court Case No. 11-CR-509
v.                                     :
                                       :
CARL A. WOOSTER                        :       (Criminal Appeal from
                                       :        Common Pleas Court)
            Defendant-Appellant        :
                                       :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 28th day of September, 2012.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

ANTONY A. ABBOUD, Atty. Reg. #0078151, Gounaris, Denslow, Abboud Co. LPA, First National Plaza, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
            Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.

{¶ 1}    Carl A. Wooster appeals from his conviction and sentence on one count of

possessing less than one gram of crack cocaine, a fifth-degree felony.

{¶ 2}    In his sole assignment of error, Wooster contends the trial court erred in overruling a suppression motion he filed prior to entering his plea.

{¶ 3}    Wooster argued in his motion that the police lacked a warrant, probable cause, or reasonable suspicion to stop and detain him. He also alleged that his statements to the police were made without a valid *Miranda* waiver and were the result of an unlawful detention. Following a hearing, the trial court overruled the motion. Wooster entered a no-contest plea to the drug charge. The trial court found him guilty and imposed a community control sanction. This appeal followed.

{¶ 4}    The pertinent facts are set forth in the trial court's suppression ruling. The only witness at the hearing was Dayton police officer David House, whose testimony the trial court found credible. Based on House's testimony, the trial court made the following factual findings:

Officer David House has been a member of the City of Dayton's Police Department for 19 1/2 years, of which 13 were spent in the Narcotics unit. As part of the Narcotics unit, he participated in thousands of drug investigations, stating that he made numerous drug arrests on a daily basis. Included in those investigations was surveillance of known or suspected drug houses. His current assignment is as a patrol officer in the 3rd District.

Officer House was assigned the evening shift. At the 11:00 p.m. roll call on Friday, January 28, 2011, Sgt. Pauley, House's supervisor[,] noted that an informant had called the drug hotline and reported there was drug activity at

[a] house located at 2858 Revels Avenue, in the 3rd District. The tipster gave the following specific information: 1) The drug activity was heaviest during two times a day—between the hours of 8:00 a.m. and 2:30 p.m. and between 9:00 p.m. and 1:00 a.m[,] 2) The daily drug traffic was most heavy around the first of the month[,] and 3) Many of the customers were white, while the dealers inside the house were black.

In the weeks prior to this report, Officer House and another police person, Officer Stack, had noticed an increase in motor traffic from white motorists in the area. A check of the license plates of the vehicles showed that many of the individuals lived outside the area and also outside of the City of Dayton itself. This particular area was predominantly inhabited by African Americans and was known for drug trafficking and numerous drug arrests. As a result of this information, Officer House was concerned.

He noted that of his drug arrests, he had made hand to hand drug buys and he had made vehicle to vehicle buys. He also noted that he had not made any drug buys on Revels Avenue.

Officer Stack, who was assigned to the 3rd District, told House that a vehicle of interest was parked near the suspected drug house. The vehicle was a blue Dodge truck that was parked west of the house. The registered owner was Elizabeth Alexander; she is the mother of one Ramel Alexander[,] a known drug dealer. House was familiar with Ramel Alexander as he had arrested him on a previous occasion at a location on Germantown Street that was several

blocks away.

After roll call, Officer House, who was working as a one man crew, driving a marked cruiser and wearing the uniform of the day, drove to 2858 Revels Avenue. He noticed [the] suspected blue Dodge pick-up truck parked west of the address. House pulled up to the driveway of a vacant residence and began to conduct surveillance.

Five to six minutes after beginning his surveillance, Officer House saw a black Chevy S10 truck pull onto Revels Avenue from McArthur Street. The driver was a female and the passenger was a male. The passenger, later identified as Carl Wooster the Defendant, left the truck and went to the front door of the residence. He was inside approximately two minutes before leaving the house and returning to the passenger side of the truck.

House noted that the amount of time that the passenger spent in the residence was consistent with the time needed to conduct a drug transaction. When he worked in the Narcotics Unit and supervised informants making controlled buys, it had taken the informants approximately two minutes to enter the drug house and purchase the drugs.

When the passenger got back into the truck, he and the driver sat in the truck cab with the lights out for about 30-45 seconds. House drove past the truck going in the opposite direction, in an attempt to get its license plate. As he drove past in his cruiser, a white female turned on the headlights and took off quickly.

Officer House turned his cruiser around and attempted to catch up. He said that it took him several blocks to reach them. As he neared the intersection of Tubman at McArthur, he noted that the truck had its left turn signal on. At the intersection and without notice, the truck put on its right signal and immediately turned right.

Based upon this traffic violation, Officer House activated his overhead lights and made a traffic stop. The driver of the vehicle was the registered owner, Kelly DeBoard. When House asked the driver where she had been, the Defendant answered that they had been visiting a friend, Ramel. This statement confirmed the policeman's suspicion that Ramel was present in the suspected drug house.

Officer House then walked to the passenger side of the vehicle and asked Defendant Wooster to leave. He conducted a pat-down, but found no weapons or sharp objects. By this time, Officer Stack arrived as back-up and she stayed with Wooster.

Officer House asked the driver if Wooster had purchased drugs. DeBoard replied that she didn't know. He next asked the driver if there were any drugs inside the vehicle. DeBoard replied that she didn't know. House then asked her if he could search the vehicle. DeBoard replied go ahead.

The driver had a large purse that she used in an attempt to conceal what she was doing with her right hand. DeBoard put her right hand behind the seat and told House that she was attempting to exit the vehicle. House thought that

she was trying to hide a gun or other weapon.

When the driver left the vehicle House immediately looked behind the driver's seat and found a green plastic pill bottle partially hidden. It had no label on it. Inside the bottle were three small oval Xanax pills. There was also a small chunk of suspected crack cocaine; a field test of the suspected crack consumed the entire amount.

An additional search of the truck revealed a piece of a plastic baggie located at the left edge of the passenger seat. Inside this piece of plastic were several crumbs of crack. At that time, both occupants of the truck were secured.

House advised the Defendant of his rights orally from memory. He asked Wooster to give him a verbal response of yes if he understood the rights as given to him. House demonstrated the process he used to give the Defendant his rights. Wooster indicated that he understood each right and gave a verbal yes in response. * * *

(Doc. #17 at 2-5).

{¶ 5}   After making the foregoing factual findings, the trial court held that House lawfully had stopped DeBoard's tuck based on both a traffic violation and a reasonable, articulable suspicion of drug-related criminal activity. The trial court further held that DeBoard validly had consented to a search of the stopped truck. Finally, the trial court found no *Miranda* violation and concluded that Wooster had knowingly, intelligently, and voluntarily made statements to police. (*Id*. at 5-9).

{¶ 6}   On appeal, Wooster challenges only the trial court's finding that House had a

lawful basis for stopping the truck in which he was a passenger. Wooster argues that no traffic violation occurred and that no reasonable, articulable suspicion of drug-related criminal activity existed.

{¶ 7}    During the suppression hearing, House testified that he observed a violation of R.C. 4511.39, which provides:

(A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning * * *.

* * *

Any stop or turn signal required by this section shall be given either by means of the hand and arm, or by signal lights that clearly indicate to both approaching and following traffic intention to turn or move right or left.

{¶ 8}    House testified that DeBoard approached an intersection with her left turn signal activated. "[A]t the last second," she turned off the left signal, tuned on the right turn signal, and made a right-hand turn. (Suppression Tr. at 14). Wooster argues that this conduct did not violate R.C. 4511.39. He asserts that the statute does not require *the same* directional signal to be used during the entire one-hundred feet preceding a turn. By signaling a left-hand turn and then immediately signaling a right-hand tun, Wooster claims DeBoard satisfied the

statute. In making this argument, Wooster notes that criminal statutes should be strictly construed against the State.

{¶ 9}   Upon review, we find that officer House observed a violation of R.C. 4511.39(A) and, therefore, had a lawful basis for making a traffic stop. The statute obligates a driver to give "an appropriate signal." It further requires a driver to "signal [an] intention to turn or move right or left" and to use "signal lights that clearly indicate * * * intention to turn or move right or left." In our view, a driver does not satisfy these requirements by signaling an intention to turn left for nearly all of the required one-hundred-foot distance before then making a right-hand turn. A left-hand signal is not "an appropriate signal" for a right-hand turn. "The canon in favor of strict construction of criminal statutes is not an obstinate rule which overrides common sense * * *." *State v. Sway*, 15 Ohio St.3d 112, 115, 472 N.E.2d 1065 (1984).

{¶ 10}   Having found that an observed traffic violation gave House a lawful basis for stopping DeBoard's truck, we need not decide whether a reasonable, articulable suspicion of drug-related criminal activity also justified the stop.

{¶ 11}   Wooster's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Carley J. Ingram

Antony Abboud
Hon. Frances E. McGee