[Cite as *State v. Gasparac*, 2017-Ohio-8711.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 17CA22 |
| | : | |
| RONALD GASPARAC | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Richland County Court of Common Pleas, Case No. 16 CR 346

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      November 20, 2017

APPEARANCES:

For Plaintiff-Appellee:

GARY BISHOP
RICHLAND CO. PROSECUTOR
JOSEPH C. SNYDER
38 South Park St.
Mansfield, OH 44902

For Defendant-Appellant:

RANDALL E. FRY
10 West Newlon Place
Mansfield, OH 44902

*Delaney, P.J.*

{¶1}  Appellant Ronald Gasparac appeals from the February 24, 2017 Sentencing Entry of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}  This case arose on February 11, 2014, when an undercover investigator with the Ohio Department of Natural Resources (ODNR) Wildlife Division found a posting on Craig's List advertising sale or trade of "yellow perch."  In three transactions, appellant sold or traded "yellow perch" to the undercover agent in the following amounts:

> *November 25, 2014*: 11 pounds, or 66 perch, valued by ODNR at $1320.00;
>
> *March 26, 2015*: 20 pounds, or 120 perch, valued by ODNR at $2,400.00;
>
> *January 17, 2016*: 20 pounds, or 120 perch, valued by ODNR at $2,400.00.

{¶3}  Appellant was charged by indictment with three counts of illegal sale of wildlife in an amount greater than $1000 pursuant to sections 1531.201(B), 1531.02, and 1531.99(D) of the Ohio Revised Code, and sections 1501:31-16-01(A) and (B)(56) of the Ohio Administrative Code.  Each offense is a felony of the fifth degree.  Appellant entered pleas of not guilty.

{¶4}  On January 17, 2017, appellant filed a "Motion to Dismiss" in which he argued "[t]he applicable statutes under Chapter 1531 of the Ohio Revised Code are

arbitrary and capricious as they apply to [appellant]," and "violate the separation of powers of the legislative branch and the executive branch of the State of Ohio." Appellee responded with a memorandum in opposition on February 3, 2017.

*The Evidentiary Hearing: Valuation of Yellow Perch*

{¶5} Appellant then changed his pleas to ones of no contest but "reserved the right to raise the valuation or constitutional defenses" (T. 4). An evidentiary hearing for that purpose was held on January 23, 2017. The parties focused on the valuation of "yellow perch" and whether the legislature can delegate law-making power to administrative agencies. (T. 10-12).

{¶6} A law enforcement administrator from ODNR testified how the rules originate and become administrative code. In late 2007, the legislature updated R.C. 1531.201 to permit the Chief of the Division of Wildlife to establish rules determining how much each wild animal is worth. The administrative code section is based on distinct criteria, a graduated scale based upon the species' aesthetic and economic value, rarity, and status as endangered. Around 50 species were determined to be "biologically significant" and values were specifically assessed. Any animals which did not reach the value of ten or above on the graduated scale fall into the category of "all other wild animals," set at $20.

{¶7} "Yellow perch" fall into the "all other wild animals" category.

{¶8} The administrator further testified that valuation of the fish takes into account fluctuating market value determined by biologists at Lake Erie who track lake-wide commercial fishery and sport fishery values. In the commercial market, seven and a quarter fish per pound are found in a pound of commercial fish filets. In recreational

fishing, however, there are ten fish per pound of filets. The difference arises because recreational fishermen are allowed to take smaller fish and "there is not quite as much meat on their filets" as those of a commercial fish cutter. (T. 21).

{¶9}   When asked how the value of the fish was determined in the instant case, the administrator testified as follows:

[WITNESS]:   * * *.  For the purpose of I guess the sanctity of the fish, we bought the fish [from appellant] frozen.  When we got them they were frozen to us.  They were in one pound packages. We had the presence enough to know those are one pound packages.  [Appellant] did a pretty good job of that, measuring out his fish.  Knowing that we didn't want to thaw the fish, if we would have thawed the fish we would have had to throw the fish away at the end of the case.  Our goal in all of these cases is to preserve the evidence the best we can.  If we have a positive outcome in the case, we try to donate that fish to someone else who can use it, a soup kitchen, needy families, whichever that happens to be.  As soon as you thaw those fish they would have been destroyed.

So we went to a lower number and we used five fish per pound.  We can see through the packages, you know, they are frozen in water so you can see pretty well, but we used a five fish per pound, which is fifty percent of what the state-wide numbers would be on catch per pound.

[PROSECUTOR]:  But even at that five fish per pound with this twenty dollar—

[WITNESS]:  You are still at a felony level.

[PROSECUTOR]: He was still over a thousand dollars?

[WITNESS]:  Yes. We bought in total seventy-five pounds of perch from [appellant].

THE COURT:  What is the price per pound you are using?

[WITNESS]:  We used five fish per pound, and then twenty dollars per fish.

THE COURT:  I see how you are getting the numbers of fish, but—so your total valuation is twenty dollars per fish?

[WITNESS]:  Correct.  That's the standard that has been set for us in the revised code.  That has been tested to your discussion that you had—

THE COURT:  Well, it wasn't set in the revised code.  It was set by you pursuant to the revised code.

[WITNESS]:  Correct, Your Honor. * * * *.

T. 22-23.

{¶10} On February 15, 2017, the trial court filed an "Order and Decision on Defendant's Motion to Dismiss" overruling appellant's motion and finding him guilty as charged upon each of the three counts.

{¶11} Appellant was subsequently sentenced to a community-control term of 2 years and required make restitution to ODNR in the amount of $6,120.00.

{¶12} Appellant now appeals from the trial court's February 24, 2017 Sentencing Entry.

{¶13} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶14} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO DISMISS."

**ANALYSIS**

{¶15} Appellant argues the trial court erred in overruling his motion to dismiss because the applicable statutes under R.C. Chapter 1531 are "arbitrary and capricious" as applied to him. We disagree.

{¶16} In his motion to dismiss before the trial court, appellant's argument was twofold: 1) "[t]he applicable statutes under Chapter 1531 of the Ohio Revised Code are arbitrary and capricious as they apply to [appellant]"; and 2) "[t]he applicable statutes under Chapter 1531 of the Ohio Revised Code violate the separation of powers of the legislative branch and executive branch of the state of Ohio." (Motion to Dismiss, 1). In his argument on appeal, appellant abandons the second branch of his argument to focus upon the first. (Brief, 9).

{¶17} We note it is well-established that the granting of authority by the General Assembly to the Chief of the Division of Wildlife is not an unlawful delegation of legislative power. *State v. Switzer*, 22 Ohio St.2d 47, 257 N.E.2d 908 (1970), paragraph one of the syllabus. *See generally* R.C. 1501.01; *State v. Whites Landing Fisheries*, 6th Dist. Erie No. E-13-021, 2014-Ohio-1314, ¶ 16, appeal not allowed, 139 Ohio St.3d 1473, 2014 -Ohio- 3012, 11 N.E.3d 1194 ["In furtherance of the division's

purpose to preserve natural resources and prevent illegal harvesting, we conclude that the Chief of the Division of Wildlife had the authority to choose the specific monitoring system in order to effectuate the intent of the legislature"]; *State /Div. of Wildlife v. Coll*, 2017-Ohio-7270, --N.E.3d--, ¶ 20 (6th Dist.); *State v. Seymour*, 4th Dist. Ross No. 1499, unreported, 1989 WL 98496, *1 (Aug. 22, 1989), appeal not allowed, 47 Ohio St.3d 712, 548 N.E.2d 245.

{¶18} We thus turn to appellant's argument that the valuation of yellow perch is arbitrary and capricious as applied to him. "Arbitrary and capricious" is one level of a constitutional void-for-vagueness analysis. Neither party has framed their argument in the context of a void-for-vagueness analysis, but the context is necessary to determine whether the valuation of yellow perch is arbitrary and capricious as applied to appellant. Appellant argues the statutes and rule vest too much power in ODNR to arbitrarily determine the value of wildlife and consequently whether offenses are felonies or misdemeanors. As applied, he argues the value of $20 per fish in appellant's case is arbitrary.

{¶19} Because this issue requires interpretation of a statute, which is a question of law, our standard of review is de novo. *State v. Consilio,* 114 Ohio St.3d 295, 871 N.E.2d 1167, 2007-Ohio-4163, ¶ 8. We begin with the strong presumption that a statute is constitutional. *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). The party challenging the statute as unconstitutional must "show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." *Id.* at 269. Furthermore, the challenger must show (1) the statute does not give warning to the ordinary citizen of what is required; (2) the statute does not

preclude arbitrary and capricious enforcement; and (3) the statute does not ensure that constitutionally protected rights are not unduly infringed. *Id.* at 271. To be considered vague, "a statute must be vague in all of its applications, assuming the statute implicates no constitutionally protected conduct." *Id.* at 272. When a criminal statute is involved, the strict construction of criminal provisions must be tempered with common sense and "evident statutory purpose." *State v. Sway*, 15 Ohio St.3d 112, 116, 472 N.E.2d 1065 (1984).

{¶20} The critical question in all cases as to void for vagueness is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law. *State v. Hayes*, 2016-Ohio-7373, 63 N.E.3d 184, ¶ 11 (5th Dist.), citing *City of Norwood v. Horney*, 110 Ohio St.3d 353, 380, 853 N.E.2d 1115 (2006). The void-for-vagueness doctrine does not require statutes to be drafted with scientific precision. *Hayes*, supra, at ¶ 12, citing *State v. Anderson*, 57 Ohio St.3d 168, 174, 566 N.E.2d 1224 (1991).

{¶21} Keeping all of these standards in mind, we review the statutes and regulations at issue in the instant case. Appellant was charged by indictment with three counts of illegal sale of wildlife in an amount greater than $1000 pursuant to sections 1531.201(B), 1531.02, and 1531.99(D) of the Ohio Revised Code, and sections 1501:31-16-01(A) and (B)(56) of the Ohio Administrative Code, each a felony of the fifth degree. Those sections state as follows:

> **R.C. 1531.201(B)**: The chief of the division of wildlife or the chief's authorized representative may bring a civil action to recover possession of or the restitution value of any wild animal held, taken,

bought, sold, or possessed in violation of this chapter or Chapter 1533. of the Revised Code or any division rule against any person who held, took, bought, sold, or possessed the wild animal.

The minimum restitution value to the state for wild animals that are unlawfully held, taken, bought, sold, or possessed shall be established in division rule.

**R.C. 1531.02**: The ownership of and the title to all wild animals in this state, not legally confined or held by private ownership legally acquired, is in the state, which holds such title in trust for the benefit of all the people. Individual possession shall be obtained only in accordance with the Revised Code or division rules. No person at any time of the year shall take in any manner or possess any number or quantity of wild animals, except wild animals that the Revised Code or division rules permit to be taken, hunted, killed, or had in possession, and only at the time and place and in the manner that the Revised Code or division rules prescribe. No person shall buy, sell, or offer any part of wild animals for sale, or transport any part of wild animals, except as permitted by the Revised Code or division rules. No person shall possess or transport a wild animal that has been taken or possessed unlawfully outside the state.

A person doing anything prohibited or neglecting to do anything required by this chapter or Chapter 1533. of the Revised

Code or contrary to any division rule violates this section. A person who counsels, aids, shields, or harbors an offender under those chapters or any division rule, or who knowingly shares in the proceeds of such a violation, or receives or possesses any wild animal in violation of the Revised Code or division rule, violates this section.

**R.C. 1531.99(D)**: Whoever violates section 1531.02 of the Revised Code concerning the buying, selling, or offering for sale of any wild animals or parts of wild animals, the minimum value of which animals or parts, in the aggregate, is one thousand dollars or more as established under section 1531.201 of the Revised Code, is guilty of a felony of the fifth degree.

**Ohio Adm.Code 1501:31-16-01(A**): Each species of wild native or naturalized mammal, bird, reptile, amphibian, mussel, fish or other aquatic or terrestrial wildlife under the authority of section 1531.02 of the Revised Code may be assigned a monetary value. This value will be derived by a score from each of seven scoring criteria listed in paragraph (A)(1) of this rule. The sum of the scores for the seven criteria in paragraph (A)(1) of this rule shall be multiplied by one of the weighting factors listed in paragraph (A)(2) of this rule. This final resulting adjusted criteria score is compared to the monetary scale shown in paragraph (A)(3) of this rule to obtain the monetary value for the wild animal.

(1) Each of the following criteria will have possible score of zero to three. A wildlife species which is not sought at all shall be scored as zero, while a highly sought species shall be scored three.

(a) Recreation. The extent to which a species is actively sought by users with wildlife interests. Scoring considers both harvest and nonharvest use of a species. There is no financial gain to the person.

(b) Aesthetic. These values represent wildlife species' beauty and unique natural history. Aesthetic values for these species exist whether or not a person ever would encounter one in its natural habitat.

(c) Educational. The educational value of a species arising from, for example, published materials and other audio-visual media about the species, displays and other educational programming or the relative frequency with which the species is used to exemplify important curricula principles.

(d) State-list designation. "Endangered, Threatened, or Species of Concern" as defined in Administrative Code and/or designated in division of wildlife document "Wildlife That Are Considered to be Endangered, Threatened, Species of Concern, Special Interest, Extirpated, or Extinct."

(e) Economics. The direct or indirect economic benefit attributable to the species as a result of recreational or legal

transactions. Further evaluation for commercially desirable species will be considered (i.e., pet trade, for human consumption, traditional medicine, religious or cultural trade, etc.).

(f) Recruitment. Reproductive and survival potential of a species as it relates to the capability for replacement of its population following decrease or loss.

(g) Population dynamics. Impact of the loss of the individual animal to its local or sub-population, and the impact of the loss to it[s] Ohio population.

(2) The individual scores for each criteria in paragraph (A)(1) of this rule are summed to derive a total criteria score. This total criteria score is multiplied by one of the following weighting factors which will adjust the summed criteria score for variance in public demand and/or perception of value for a species. The weighting factor relates the overall demand for a species to its existing supply and to future opportunity for public use.

(a) 1.0--Abundant. Common across its Ohio range with no consumptive use.

(b) 1.1--Common or species of concern. Common across its Ohio range with consumptive recreational demand, or designated as a species of concern.

(c) 1.3--Threatened. A species designated by the division of wildlife as threatened.

(d) 1.5--Endangered. A species designated by the division of wildlife as endangered, which is vulnerable to extirpation from the state.

(3) The total criteria score multiplied by the weighting factor in paragraph (A)(2) of this rule, provides an adjusted criteria score and correlates to the restitution value in the following table.

Adjusted Criteria and Value

| Score Range | Monetary Value |
|---|---|
| 0-3 | $20.00 |
| 4-6 | $50.00 |
| 7-8 | $100.00 |
| 9-10 | $250.00 |
| 10.1-11.9 | $500.00 |
| 12-16 | $750.00 |
| 17-20 | $1,000.00 |
| 20.1+ | $2,500.00 |

**Ohio Adm.Code 1501:31-16-01(B)**: The chief of the division of wildlife or his authorized representative may bring a civil action to recover possession of or the restitution value of any wild animal held, taken, bought, sold or possessed in violation of Chapter 1531. or Chapter 1533. of the Revised Code or any division rule against any person who held, took, bought, sold or possessed, the wild animal. The following shall be presumed to be the minimum value to the state of wild animals illegally held, taken, bought, sold or possessed.

* * * *.

(56): All other wild animals: - $20.00.

{¶22} In the instant case, appellant was cited under the general statute, R.C. 1531.02, and also charged with violating specific Ohio Administrative Code sections. See, *Coll*, supra, 2017-Ohio-7270 at ¶ 21. Where applicable, the relevant statute and regulation must be read in pari materia to determine whether they provide reasonable notice of the prohibited conduct. *State v. Whites Landing Fisheries*, 6th Dist. Erie No. E-13-021, 2014-Ohio-1314, ¶ 13, citing *State v. Disbennett,* 4th Dist. Hocking No. 408, 1985 WL 11156, *3 (Sept. 23, 1985). R.C. 1531.02 does not specifically set out prohibited conduct, but the reference to the division orders in R.C. 1531.02 puts the public on notice there are regulations which govern the protection of wild animals. *State v. Seymour*, 4th Dist. Ross No. 1499, 1989 WL 98496, *1. When Ohio Adm.Code 1501:31-16-01(A) and (B) are read, the prohibitions are "quite specific and not unconstitutionally vague," as is the valuation procedure for the wildlife at issue. See, *Seymour*, supra.

{¶23} Appellant was also charged under R.C. 1531.201, which authorizes ODNR's power to pursue restitution as described in Division rules. As appellee points out, the Ohio Supreme Court has held R.C. 1531.201 is unambiguous and clearly expresses the intent of the legislature. *Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 14.

{¶24} The wildlife at issue is yellow perch, with a criteria score determined pursuant to Ohio Adm.Code 1501:16-01(A)(1), multiplied by the weighting factors of (A)(2). Because yellow perch fall into the category of "all other wild animals" not specifically delineated, the value of each perch is $20. Upon examining the statutes

and applicable regulations, "tempered with common sense and 'evident statutory purpose,'" an individual of ordinary intelligence would understand what he is required to do under the law, or rather, understand what he is prohibited from doing and the resulting valuation assessed. *Sway*, supra, 15 Ohio St.3d at 116.

{¶25} Other courts have found specific prohibitions not void for vagueness. *State /Div. of Wildlife v. Coll*, 2017-Ohio-7270, --N.E.3d--, ¶ 20 (6th Dist.) [fishing in closed zone, taking walleye less than 15 inches]; *State v. Seymour*, 4th Dist. Ross No. 1499, 1989 WL 98496, *1 [deer hunting after temporary tag detached from special deer permit].

{¶26} Appellant cites *Stanton v. State Tax Commission*, 114 Ohio St. 658, 151 N.E. 760 (1926) for the principle that "arbitrary and capricious laws and rules are subject to judicial scrutiny within the framework of due process rights," but *Stanton* does not reference "arbitrary and capricious." In that case, the Ohio Supreme Court reviewed the constitutional separation of powers and determined whether a court of common pleas has jurisdiction to review an order of the state tax commission. Id. The Court held "[b]y virtue of section 4 of article IV of the Ohio Constitution, the Legislature may confer upon the court of common pleas jurisdiction to review orders of the state tax commission, and section 5611-2, General Code, conferring such jurisdiction, does not contravene any provisions of the state or federal Constitution." Id., at the syllabus. *Stanton* is thus inapposite to appellant's void-for-vagueness argument.

{¶27} Appellant also cites *Urmston v. City of N. College Hill*, 114 Ohio App. 213, 175 N.E.2d 203 (1st Dist.1961), for the definition of "arbitrary" and "unreasonable." In that case, the court reviewed a zoning board's refusal to rezone property, finding the

action was not arbitrary and unreasonable because the "legislative authority could reasonably have had considerations of public health, safety, morals or general welfare in mind, both in the passage of the entire original zoning ordinance and in its refusal of the plaintiff-appellee's application of a change from residence zone to business zone." Id. at 216–17. Applying the same principles to the instant case, the prohibition on selling wildlife, in this case yellow perch, furthers Ohio's ownership of and the title to all wild animals in the state, "which holds such title in trust for the benefit of all the people." R.C. 1531.02. The cogent valuation system for countless varieties of wildlife affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law.

{¶28} We agree with the trial court that the valuation procedure for yellow perch is rational and takes into account the sport and economic value of the fish to the state of Ohio. The valuation of the fish for the purpose of criminal prosecution is not tied only to its commercial value. Reading the statutes and rules in pari materia, we find the valuation to be neither arbitrary nor capricious. "* * *[T]he legislative intent in enacting R.C. 1531.201 is to preserve Ohio's wildlife for legitimate hunters and naturalists and to provide a significant deterrent to those individuals who seek to harm the state's aesthetic, economic, and recreational interests." *Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 23.

{¶29} The applicable statutes, regulations, and resulting valuation regarding illegal sale of wild yellow perch do provide a reasonable person of ordinary intelligence fair notice and sufficient definition and guidance as to the prohibition and the manner in

which the value of the fish is calculated; therefore, we find the statutory requirements are not void for vagueness.  See *Hayes*, supra.

{¶30} Appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶31} Appellant's sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Hoffman, J. and

Wise, John, J., concur.